IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRACEY STEELE, et al.

v.  :  Civil Action No. DKC 14-3020

GURVINDER SINGH, et al.

**MEMORANDUM OPINION**

Defendants Gurvinder Singh, Simran Kaur Chadha, and Preeti Singh move to dismiss the amended complaint filed by Plaintiffs Tracey Steele and Kelli Queen pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.  The issues have been fully briefed and no hearing is necessary.  Local Rule 105.6. For the following reasons, the motion will be granted.

**I.  Background**

The following facts are alleged in the amended complaint. Plaintiffs are partners who invested in a business in Bethesda, Maryland, operating as THREADS.  Defendants are alleged to be directors, operator/managers, and/or partners of THREADS USA, Inc.  Specifically, Plaintiffs allege that THREADS USA, Inc. operates out of six locations throughout the District of Columbia, Maryland and Virginia, doing business as "Threads – The Beauty Enhancers" ("THREADS").  (ECF No. 7 ¶ 8).  The company primarily performs "eyebrow threading" and other types

of threading to remove or shape facial hairs. (*Id.* ¶ 9). On or about June 21, 2006, Defendant Simran Kaur Chadha a/k/a Sonia Saghu ("Sonia Saghu") registered a THREADS business with the Department of Consumer and Regulatory Affairs ("DCRA") as a District of Columbia corporation, ("THREADS DC") identifying herself as the primary contact. THREADS DC operated its first store located at 1534 U Street, N.W., Washington, D.C. 20009 prior to December 20, 2006. On or about December 20, 2006, after discussions among Defendants Preeti Singh and Sonia Saghu (collectively, "Defendant Partners") and Plaintiffs, the parties agreed to enter into a joint venture to open a third THREADS location in the metropolitan Washington, D.C. area. (*Id.* ¶ 12).

On or about December 20, 2006, Plaintiff Kelli Queen provided an initial investment of $20,000 made payable to Defendant Sonia Saghu in contemplation of securing the third THREADS location. Plaintiffs and Defendant Partners jointly began searching for viable locations in the metropolitan Washington, D.C. area for a third THREADS location during 2007. (*Id.* ¶ 13). On or about February 7, 2007, Plaintiff Tracey Steele provided an initial investment of $20,000, also made payable to Defendant Sonia Saghu, in contemplation of securing the third THREADS location. (*Id.* ¶ 15). Throughout the year

2

2007 into the beginning of 2008, Defendant Partners and Plaintiffs contacted commercial real estate brokers and discussed plans for opening the third THREADS location. (*Id.* ¶ 16).

Although the agreement signed by Plaintiffs and Defendant Sonia Saghu contemplated only a $40,000 investment into the partnership, Defendant Saghu indicated that an additional $50,000 would be needed to open the THREADS business in the Maryland location. (*Id.* ¶ 17). On or about May 3, 2008, Plaintiff Queen provided an additional investment of $10,000 into the partnership made payable to Defendant Saghu in connection with the THREADS business endeavor. (*Id.* ¶ 18). On or about May 10, 2008, Plaintiff Queen provided a final investment of $15,000 into the partnership made payable to Defendant Gurvinder Singh, based upon instructions received from Defendant Saghu in connection with the THREADS business endeavor. On or about May 22, 2008, Plaintiff Steele provided a final investment of $25,000 into the partnership also made payable to Defendant Gurvinder Singh, based upon instructions she received from Defendant Saghu in connection with the THREADS business endeavor. The investment made by Plaintiffs into the partnership was in connection with the investment in the THREADS

3

business opportunity that Plaintiffs and Defendant Saghu agreed to pursue as contemplated in their written and oral agreement.

On July 16, 2008, apparently unbeknownst to Plaintiffs, Defendant Gurvinder Singh filed with Maryland's State Department of Assessment and Taxation ("SDAT"), Articles of Incorporation for THREADS USA, Inc. as a domestic Maryland corporation, ("THREADS MD") identifying himself as the sole director. (*Id.* ¶ 24). The Articles of Incorporation stated that one class of common stock existed of 200 shares at $100.00 par value per share. According to Plaintiffs, they never agreed to the establishment of the corporation and were unaware of Defendant Gurvinder Singh's involvement because Plaintiffs only interacted with the other two defendants – Preeti Singh and Sonia Saghu – under the belief that THREADS MD was operating as a partnership with those two. Plaintiffs allege that a grand opening was held at the THREADS MD location on August 16, 2008, which Plaintiffs and Defendant Partners attended.

Subsequently, Defendant Saghu told Plaintiffs that the THREADS MD business was not as profitable as expected and therefore did not have sufficient cash flow to distribute profits. (*Id.* ¶ 28). On or about November 2009, Defendant Saghu provided an income statement for the THREADS MD location

4

for October 2009.   (*Id.* ¶ 29).   Once again unbeknownst to Plaintiffs, THREADS DC opened other locations.   THREADS opened another location in the Chinatown neighborhood of Washington, D.C.   On June 3, 2010, THREADS registered as a Virginia corporation to open its first location in Virginia and on July 5, 2011, registered a second Virginia corporation in opening its second Virginia location.   (*Id.* ¶ 30).   Each of the locations and operations in Virginia identify Defendant Gurvinder Singh as the registered agent.

In April 2012, THREADS MD's charter was forfeited and in April 3, 2013, Defendant Gurvinder Singh filed Articles of Revival of THREADS MD, identifying himself as the sole shareholder of THREADS MD.   On or about September 20, 2013, Plaintiff Queen inquired by text message regarding distribution of profits, and Defendant Sonia Saghu indicated that she would begin distribution of profits by telling her accountant, but suggesting the months were slow. Shortly thereafter, Plaintiffs each received separate checks for approximately $425.   (*Id.* ¶ 34).

On or about May 2014, Plaintiffs inquired to Defendant Sonia Saghu about payments and distributions of profits.   On or about July 21, 2014, THREADS MD issued to each Plaintiff a check

5

payable in the amount of $814.00, purportedly signed by Defendant Gurvinder Singh. (*Id.* ¶ 36). Based upon Plaintiffs' information and belief obtained in July 2014, Defendants are related. Plaintiffs contend that Defendants used income and profits from THREADS MD to finance their lifestyles and open other THREADS locations depriving Plaintiffs of income. (*Id.* ¶ 38). The amended complaint alleges that Defendants engaged in a cover up and conspired among themselves to prevent Plaintiffs from receiving their profits and income.

Plaintiffs, both Maryland residents, filed a complaint on September 24, 2014, naming as defendants Gurvinder Singh, Sonia Saghu, Preeti Singh, and "THREADS USA, Inc.," a Maryland corporation. (ECF No. 1). Defendants moved to dismiss arguing, among other things, lack of complete diversity. Subsequently, Plaintiffs filed an amended complaint. (ECF No. 7). The amended complaint names as defendants Gurvinder Singh, Sonia Saghu, and Preeti Singh and asserts the following causes of action: breach of contract; unjust enrichment; gross negligence; intentional misrepresentation, concealment, or non-disclosure; constructive fraud; civil conspiracy; aiding and abetting; and tortious interference with contractual relations. (ECF No. 7). Defendants moved to dismiss the amended complaint. (ECF No. 9).

6

Plaintiffs opposed the motion (ECF No. 11), and Defendants replied (ECF No. 12).

## II. Analysis

Plaintiffs assert jurisdiction based on diversity of citizenship. Diversity jurisdiction is satisfied "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the litigation is between "citizens of different States." 28 U.S.C. § 1332(a)(1). The complaint identifies Plaintiffs as citizens of Maryland, and Defendants as citizens of Virginia. For the amount in controversy, Plaintiffs seek $90,000 in compensatory damages and $250,000 in punitive damages. Defendants contend that jurisdiction is lacking because: (1) each plaintiff seeks only $45,000 in damages, and those amounts cannot be aggregated for jurisdictional purposes; and (2) there is no legal basis for the claim for punitive damages. Furthermore, they assert that THREADS USA, Inc., a Maryland corporation, is a necessary party whose addition would destroy complete diversity.

"If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only of 'it is apparent, *to a legal certainty*, that the plaintiff cannot recover the amount claimed.'" *JTH Tax, Inc. v. Frashier*, 624

F.3d 635, 638 (4th Cir. 2010) (*quoting St. Paul Mercury Indem.
Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)) (emphasis in
original).    Defendants must show "the legal impossibility of
recovery" to be "so certain as virtually to negative the
plaintiff's good faith in asserting the claim." *JTH Tax, Inc.*,
624 F.3d at 638 (*quoting Wiggins v. N. Am. Equitable Life
Assurance Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981)).

The amount in controversy cannot be met by adding the
compensatory damages alleged by individual Plaintiffs.
"Separate and distinct claims, regardless of whether they share
a community of interest or originate in a single transaction or
event, may not be aggregated to satisfy the jurisdictional
amount-in-controversy requirement." *Georgiades v. Martin-
Trigona*, 729 F.2d 831, 833 (D.C.Cir. 1984); *Compton v. Alpha
Kappa Alpha Sorority, Inc.*, 64 F.Supp.3d 1, 12 (D.D.C. Aug. 12,
2014) ("As a result, the separate and distinct claims of two or
more plaintiffs cannot be combined to satisfy the jurisdictional
amount."). To cure this defect, Plaintiffs seek punitive
damages based on the following causes of action alleged in the
amended complaint: gross negligence (count 3); intentional
misrepresentation, concealment, or non-disclosure (count 4);
constructive fraud (count 5); and aiding and abetting (count 7).

Judge Hollander recently explained the law with respect to aggregating punitive damages:

> It is well established that "punitive damages may be aggregated with other damages to satisfy the amount-in-controversy requirement." *Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 462 (6th Cir. 2010); *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (stating that punitive damages must be considered in calculating the amount in controversy). However, a proponent of diversity jurisdiction "must do more than 'point to the theoretical availability of certain categories of damages' "to satisfy the amount-in-controversy requirement." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (citation omitted). Indeed, the Fourth Circuit has counseled that "claims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." *Saval v. BL Ltd*., 710 F.2d 1027, 1033 (4th Cir. 1983).
>
> In *Saval*, a 1983 case involving a tort claim under Maryland law, the Fourth Circuit recognized that "no matter what the theory of recovery, punitive damages cannot be recovered absent malice." *Id*. at 1033; *see, e.g., Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 265, 841 A.2d 828, 837 (2004); *Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d 1000, 1003-04 (1997); *Montgomery Ward v. Wilson*, 339 Md. 701, 733, 664 A.2d 916, 932 (1995); *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992); *French v. Hines*, 182 Md.App. 201, 248-50, 957 A.2d 1000, 1026-28 (2008). The *Saval* Court ruled that, when a plaintiff's complaint demands punitive damages but

> asserts claims upon which punitive damages cannot be awarded as a matter of law, the claim for punitive damages cannot be aggregated to satisfy the jurisdictional threshold. *See Saval*, 710 F.2d at 1033-35. The Fourth Circuit relied upon the law of Maryland, which then permitted an award of punitive damages only if either actual malice or implied malice was shown. *Saval*, 710 F.2d at 1033. Since *Saval*, the Maryland Court of Appeals has restricted the availability of punitive damages still further, and punitive damages can now be awarded under Maryland law only in cases of "actual malice," which means "ill will, fraud, intent to injure, or other mens rea exhibiting an evil motive or purpose." *Scott, supra*, 345 Md. at 29 n. 3, 690 A.2d at 1004 n. 3. *Accord Tierco Md., Inc. v. Williams*, 381 Md. 378, 414 n. 29, 849 A.2d 504, 526 n. 29 (2004); *George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay*, 197 Md.App. 586, 636-37, 14 A.3d 1193, 1222-23 (2011); *see generally French, supra*, 182 Md.App. at 248-50, 957 A.2d at 1026-28.

*Joy Family Ltd. Partnership v. United Financial Banking Companies, Inc.*, Civ. Action No. ELH-12-3741, 2013 WL 4647321, at *9 (D.Md. 2013).

Defendants argue that the allegations in the amended complaint do not set forth a legal basis entitling Plaintiffs to punitive damages and do not plead fraud sufficiently. Plaintiffs counter in their opposition to the motion to dismiss:

> Plaintiffs in the instant matter alleged throughout [their] complaint factual assertions that demonstrate that the

10

defendants have acted with malice and/or reckless disregard entitling Plaintiffs[] to rightfully claim punitive damages in the amount of $250,000.  See Counts Three, Four, Five and Seven of the Original and Amended Complaint.  The claims made by plaintiffs are not warrantless[,] the defendants['] fraud was intentional and deliberate, each knowing that their representation to Plaintiffs regarding the THREADS business, its ownership and Plaintiffs['] role as partners were false or were recklessly indifferent in the sense that they each knew that the money invested by Plaintiffs were being diverted without their knowledge and consent.

. . .

The defendants have [demonstrated actual malice] by filing documents alleging the ownership of the THREADS business as solely belonging to Defendant Gurvinder; Defendant Partners [made] false statements to Plaintiffs regarding the financial and operational standing of the THREADS business, contrary to their duty of care and loyalty in an effort to divert the Plaintiffs['] $90,000 investment under fraudulent schemes[.]

(ECF No. 11-1, at 4-5).

Plaintiffs' arguments are misguided.  As stated above, under Maryland law, punitive damages are limited to circumstances where the defendant has acted with actual malice. Accordingly, punitive damages may not be awarded for the gross negligence claim in count three.  *See Smith v. Mothershed*, Civ.

Action No. WMN-12-3215, 2013 WL 4501310, at *6 (D.Md. Aug. 21, 2013). Plaintiffs' contention that Defendants' conduct constituted recklessness also fails to support an award of punitive damages under Maryland law. *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216, 235 (1995) (holding that "reckless disregard" or "reckless indifference" falls short of the "*mens rea* which is required to support an award of punitive damages.").

The allegations underlying the fraud claims also are problematic. Under Maryland law, "'[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement.'" *Sass v. Andrew*, 152 Md.App. 406, 432 (2003) (citation omitted). The elements of fraud in Maryland are:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Md. Envtl. Trust v. Gaynor*, 370 Md. 89, 97 (2002).  Separately, where a plaintiff alleges fraud with regard to mere nondisclosure of a material fact, he must establish that the defendant owed a duty of care to the plaintiff.  *United States v. Colton*, 231 F.3d 890, 899 (4ᵗʰ Cir. 2000) ("[S]ilence as to a material fact (nondisclosure), without an independent disclosure duty, usually does not give rise to an action for fraud . . .").  In addition to satisfying Rule 8(a), a plaintiff asserting fraud is subject to the heightened pleading standard set forth in Rule 9(b).  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4ᵗʰ Cir. 1999).  Rule 9(b) states that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The word "circumstances" is interpreted "to include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'"  *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313-14 (D.Md. 2000) (*quoting Windsor Assocs. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).  The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for

13

the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all of the facts are learned only after discovery, and safeguard the defendant's reputation. *Harrison*, 176 F.3d at 784.

The essence of the "fraud" appears to be that Defendants knew that the money Plaintiffs invested was being diverted without their knowledge and consent.   The alleged false statements – which, according to the allegations in the amended complaint, were made *after* Plaintiffs invested the money – concern the financial and operational standing of the THREADS business.   Neither the allegations in the complaint, nor the assertions in Plaintiffs' opposition to the motion to dismiss, identify with sufficient particularity any false statements made by any defendant on which Plaintiffs relied to their detriment. As Defendants argue, Plaintiffs do not even allege contact with Defendant Gurvinder Singh and Preeti Singh before they invested the money by May 2008.   Plaintiffs also do not provide any factual basis for their claims of concealment and/or non-disclosure.   All of the money was invested by Plaintiffs by May 22, 2008, prior to the creation of THREADS USA, Inc.   (*See* ECF No. 7 ¶ 24).   Plaintiffs' mere labeling of Defendants' conduct as "fraudulent" or malicious is insufficient to establish the

14

amount in controversy based on entitlement to punitive damages. Finally, punitive damages may not be recovered for the aiding and abetting claim because the underlying tort claims do not support a claim for punitive damages. *See, e.g., Alleco Inc. v. Harry & Jeanette Weinberg Found.*, 340 Md. 176, 180 (1995) ("[C]ivil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable.").

Based on the foregoing, the compensatory damages sought in the amended complaint may not be aggregated and the pleading is woefully inadequate to support Plaintiffs' request for punitive damages. Defendants have shown to a legal certainty that Plaintiffs cannot establish the minimum amount in controversy. The court does not reach the alternative arguments that THREADS USA, Inc. is a necessary party or whether Plaintiffs' claims are subject to dismissal for failure to state a claim.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
